**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: September 30 2010**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 09-34336 |
| | ) | |
| Richard L. Grine, Jr., and | ) | Chapter 7 |
| Samantha L. Grine, | ) | |
| | ) | Adv. Pro. No. 09-3229 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Richard L. Grine, Jr., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Thomas Chambers, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION

This adversary proceeding is before the court after trial on Plaintiffs' complaint alleging a willful violation of the automatic stay under 11 U.S.C. §362(k) against Defendant Thomas Chambers and Defendant's counterclaim for breach of contract. The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference.

28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine whether the automatic stay has been violated are core proceedings that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2); *see In re Bunting Bearings*, 302 B.R. 210, 213 (Bankr. N.D. Ohio 2003). Defendant's counterclaim is a core proceeding as it affects the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(O).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, Plaintiffs are entitled to judgment in their favor on Defendant's counterclaim, Plaintiff Richard Grine is entitled to judgment on the complaint in his favor in the amount of $565, and Defendant is entitled to judgment in his favor as to Plaintiff Samantha Grine's claim brought under § 362(k).

## FINDINGS OF FACT

On June 26, 2009, Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code. Defendant is an optometrist and a creditor included in Debtors' bankruptcy schedules. There is no dispute that Defendant received notice of Debtors' bankruptcy. Thereafter, on August 10, 2009, Defendant sent a billing statement to Plaintiff Richard Grine for services rendered prepetition. [Pl. Ex. A]. Defendant testified that the statement was sent in error after being notified of the bankruptcy due to one of his employees failing to properly enter information regarding Plaintiffs' bankruptcy on two separate screens of a computer billing program. Plaintiffs notified their attorney, Kevin Mack, that Defendant had sent them the billing statement.

On August 25, 2009, Mack sent Defendant a "To Whom It May Concern" letter, stating that Defendant's attempt to collect a debt after receiving notice of Plaintiffs' bankruptcy was a violation of the automatic stay and that he could settle the matter and avoid Plaintiffs filing a complaint in bankruptcy court by paying $1,500 in damages. [Def. Ex. 1]. Defendant telephoned Mack to discuss the letter. During their conversation, Mack told Defendant that Plaintiffs would accept $200 to settle the matter, which amount, Mack explained, was based upon his hourly rate and his time spent addressing the matter. At the time, Defendant told Mack that his fee was excessive and that he did not believe he spent that much time reviewing one billing statement. During their conversation, Defendant characterized the demand as

2

extortion in light of the inadvertent mistake that resulted in the postpetition billing. He nevertheless agreed to pay the $200 and sent Mack a check for that amount made payable to Mack. Defendant added the handwritten notation "Extortion Money" in the memo section of the check. At trial, Defendant testified that he agreed to pay the $200 in order "to get the dog off my back." In a letter dated September 4, 2009, Mack objected to Defendant's characterization of the $200 payment as "Extortion Money." Mack stated in the letter that he incorrectly assumed that Defendant was serious when they discussed settling the matter and that he was returning the check to Defendant. [Def. Ex. 4]. The letter further states: "I will proceed with filing a complaint in federal court for your violation. If you wish to resolve this matter prior to me filing a complaint, I would advise you consult an attorney and have him contact me!" [*Id.*]. After waiting nearly three weeks with no response to his September 4 letter, Mack filed the instant adversary complaint on behalf of Plaintiffs.

There is no dispute that the August 10 billing statement was the only attempt made by Defendant to collect the debt owed him and that he corrected the procedures used in his office to ensure that no further violations of the stay would occur after receiving Mack's August 25, 2009, letter. Defendant testified that if he had not received that letter, at least two or three additional billing statements would have been sent before the error was corrected.

Plaintiff Samantha Grine testified that Plaintiffs' only monetary damages include twelve hours of lost wages at $7.65 per hour for the time she took off work for the trial, for preparation for trial, and for several visits to Mack's office, as well as approximately $5.00 for gasoline costs in traveling to Mack's office, and their attorney's fees. She further testified that receipt of the billing statement caused Plaintiff Richard Grine to miss no work at all since he works third shift.

Mack also testified as to the nature and value of his services relating to this proceeding. In this regard, he prepared an attorney time sheet of hours that he testified reflect time spent on matters relating to this proceeding, [Pl. Ex. B], which the court discusses in greater detail below. Mack testified that he charges an hourly rate of $250.00 in his bankruptcy practice.

## LAW AND ANALYSIS

In their complaint, Plaintiffs allege that Defendant violated the automatic stay by sending them a billing statement for the amount owed him after they filed their bankruptcy petition. A statutory automatic stay arises upon the filing of a bankruptcy petition. 11 U.S.C. § 362(a). To enforce creditor compliance with the automatic stay, the Bankruptcy Code provides that "[a]n individual injured by any willful violation of

3

a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k).[1]  In order to prevail on a § 362(k) claim, a plaintiff must prove by a preponderance of the evidence that the stay imposed under § 362 was violated, that the violation was committed willfully and that plaintiff was injured by the violation. *In re Skeen*, 248 B.R. 312, 316 (Bankr. E.D. Tenn. 2000).  A willful violation occurs "when the creditor knew of the stay and violated the stay by an intentional act." *Sharon v. TranSouth Fin. Corp. (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999).  It does not require proof of a specific intent to violate the stay. *Id.* Rather, it requires that the acts that violate the stay be intentional. *Lansdale Family Rest., Inc. v. Weiss Food Serv. (In re Lansdale Family Rest., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992); *Skeen*, 248 B.R. at 317. Indeed, "where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." *Fleet Mortg. Group, Inc. v. Kaneb (In re Kaneb)*, 196 F.3d 265, 269 (1st Cir. 1999).

Under § 362(a)(6), the filing of a voluntary bankruptcy petition operates as a stay, applicable to all entities, of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . ."  In this case, Defendant does not dispute the fact that a willful violation of the stay occurred when he sent Plaintiffs the postpetition billing statement for prepetition services. Rather, he asserts the affirmative defense that Plaintiffs' claims are barred by the doctrine of accord and satisfaction and alleges a counterclaim that Plaintiffs breached the settlement agreement by commencing this adversary proceeding.  Defendant also argues that Plaintiffs' alleged damages are not the result of his violation of the stay.  For the reasons that follow, Defendant has not met his burden of proving a valid accord and satisfaction nor has he proven his breach of contract counterclaim.  However, the court agrees, at least in part, that Plaintiffs are not entitled to the total amount of damages sought by them.

**I. Accord and Satisfaction**

Ohio law applies because all of the parties reside in Ohio and the actions in dispute happened in Ohio. Under Ohio law, "[a]n accord is a contract between a debtor and a creditor in which the creditor's claim is settled in exchange for a sum of money other than that which is allegedly due. Satisfaction is the

---

[1] Former § 362(h) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and redesignated § 362(k).  That subsection, however, was not otherwise amended in any respect relevant to this proceeding.  The court, therefore, finds the pre-BAPCPA caselaw cited herein interpreting § 362(h) to be relevant in applying post-BAPCPA § 362(k).

4

performance of that contract." *Allen v. R.G. Indus. Supply*, 66 Ohio St. 3d 229, 231 (1993). A valid accord and satisfaction completely discharges the debt owed by a party against whom a claim for damages is made and constitutes a defense to any attempt to enforce such claim. *Id.* As an affirmative defense, Defendant has the burden of proving an accord and satisfaction.

Although it is clear that settlement discussions occurred in this case, the testimony and evidence is insufficient to support a finding that a meeting of the minds occurred. The parties' testimony shows that Plaintiffs agreed to accept $200.00 to settle a valid claim for damages. Defendant, on the other hand, characterized his payment of $200.00 as "Extortion Money," not as payment of a valid claim for damages. At trial, he testified that he believed the $200.00 demand was "extortion," that Plaintiffs' were taking advantage of the situation and that he was being "squeezed for making one mistake." Thus, it does not appear that Defendant agreed in his own mind to pay a valid claim for damages. However, even if a meeting of the minds did occur such that there was an accord, there was no satisfaction of the debt owed. The check sent to Mack by Defendant was returned to Defendant since, as discussed below, it did not constitute a valid tender of performance under the agreement.

## II. Breach of the Settlement Agreement

To prevail on a breach of contract action under Ohio law, Defendant must show (1) that a contract existed between the parties, (2) that he fulfilled his obligations under the contract, (3) that Plaintiffs failed to fulfill their obligations under the contract without legal excuse, and (4) that he sustained damages as the result of such failure. *See Lawrence v. Lorain County Community College*, 127 Ohio App. 3d 546, 549 (1998). Even assuming that the first and fourth elements of his counterclaim are satisfied, Defendant has failed to meet his burden as to the second and third elements.

Regardless of whether the $200.00 check submitted to Mack was negotiable as argued by Defendant, the inclusion of "Extortion Money" in the memo section of the check made it unacceptable tender. "Tender" of payment is defined as an unconditional offer of payment consisting of the actual production of the amount due on a specific debt or obligation. *Braun v. Pikus*, 108 Ohio App. 3d 29, 32 (1995); *Telemark Development Group, Inc. v. Mengelt*, 313 F.3d 972, 978 (7th Cir. 2002). Thus, a valid tender of payment "must be both for the entire amount of the obligation and it must be unconditional." *In re Ott*, 278 B.R. 154, 161 (Bankr. N.D. Ohio 2002). In this case, a reasonable person would view negotiating the check submitted by Defendant as having to acknowledge that it was obtained by extortion. The court finds this to be an unacceptable condition to the offer of payment that was not a part of any settlement agreement. After the

5

check was returned to him, Defendant failed to submit an unconditional offer of payment. As such, he failed to fulfill his obligations under any agreement of the parties.

In addition, to the extent that there was a meeting of the minds as to settlement of Plaintiffs' claim for damages, and to the extent that Plaintiffs agreed to forego bringing an action for damages in bankruptcy court in exchange for Defendant's payment of damages in the amount of $200, Defendant's failure to perform under the purported settlement agreement defeated the purpose of the agreement and, therefore, constitutes a material breach of the agreement. *See Boehl v. Maidens*, 102 Ohio App. 211, 216 (1956). Where there is a material breach of contract, the non-breaching party is entitled to rescind or terminate the contract. *See Yurchak v. Jack Boiman Const. Co.*, 3 Ohio App. 3d 15, 16 (1981)("[W]here there is a material breach of contract, substantial nonperformance and entire or substantial failure of consideration, the injured party is entitled to rescission of the contract. . . ."); *Boehl,* 102 Ohio App. at 215 (stating that any right to terminate the contract resulted "by operation of law, because of a material breach of the contract"); *Lakes v. Mayo*, No. CA2006-01-003, 2006 Ohio App. LEXIS 6042, **3-4, 2006 WL 3345513, *1(Ohio App. Nov. 20, 2006) (citing *Software Clearing House, Inc. v. Intrak, Inc.*, 66 Oho App. 3d 163, 170 (1990) and stating that "[a] party is relieved of its obligations under a contract only if the breach is material"). In light of Defendant's material breach, Plaintiffs were discharged from their obligations under any agreement that may have existed.

### III. Damages

The only remaining issue is the proper measure of Plaintiffs' damages.[2] Where a willful violation of the automatic stay has occurred, as Defendant concedes has occurred in this case, § 362(k) mandates the award of actual damages, including costs and attorneys' fees, caused by the violation. *In re Daniels,* 316 B.R. 342, 354 (Bankr. D. Idaho 2004). Even though the damages provision of § 362(k) is stated in mandatory terms, a damages award must have a sufficient factual foundation. Under § 362(k), a plaintiff is entitled only to damages reasonably incurred as a proximate result of the violation of the stay. *See United States v. Fingers (In re Fingers)*, 170 B.R. 419, 433 (S.D. Cal.1994); *Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 350 (Bankr. S.D.N.Y. 1998) (to render creditor liable for actual damages pursuant to § 362(h), debtor must prove that creditor's conduct proximately caused the damages claimed and that

---

[2]The complaint also demands punitive damages. At trial, Plaintiffs wisely withdrew their request for punitive damages. The record does not support an award of punitive damages.

those damages were a reasonably foreseeable result of creditor's actions in violating the stay). Damages under § 362(k) must also be proven with reasonable certainty and must not be speculative or based on conjecture. *In re Archer*, 853 F.2d 497, 499-500 (6th Cir. 1988). As the parties seeking recovery, Plaintiffs have the burden of proving entitlement to damages. *Sharon v. TranSouth Fin. Corp. (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999).

### A. General Compensatory Damages

Plaintiffs seek damages consisting of Samantha Grine's lost wages for time she took off work for the trial, for preparation for trial, and for several visits to Mack's office, a $5 gasoline expense for traveling to their attorney's office, and their attorney's fees. While Defendant concedes that a willful violation of the automatic stay occurred when his staff caused a billing statement to be sent to Plaintiff Richard Grine for services rendered prepetition, there is no evidence regarding any violation of the stay with respect to Samantha Grine. And there was no testimony explaining the necessity of Samantha Grine missing work to visit Mack's office, prepare for trial, or even attend the trial. While the $5 travel expense would have been incurred even if only Richard Grine had visited Mack's office, Plaintiffs have failed to show that Samantha Grine's loss of wages was the result of the stay violation regarding Richard Grine. The court finds that Samantha Grine is not entitled to any damages and that Richard Grine is entitled to an award of $5 in reimbursement for travel expenses resulting from Defendant's action.

### B. Attorney's Fees and Costs

Plaintiffs also seek compensation for attorney's fees in the amount of $1,972. Their request for fees raises three legal issues. First, Plaintiffs' request includes fees incurred both before and after the complaint was filed initiating this adversary proceeding. Does § 362(k) encompass fees incurred in both time frames? Second, the court decided above that the only other actual damages Plaintiffs proved at trial was $5 for travel expenses to be awarded to Richard Grine. Is an award of attorneys' fees and costs permitted under § 362(k) if no or *de minimis* other actual damages are awarded? Third, what standard applies in evaluating proof of attorneys' fees and costs under § 362(k)?

#### i. Fees Both Pre- and Post-Litigation

There is a split of circuit-level authority as to whether § 362(k) includes attorneys' fees for both remedying and stopping the improper action and for prosecuting a resulting claim for damages in an adversary proceeding. The Fifth Circuit has held, with minimal discussion and relying on Texas federal trial court precedents, that "it is proper to award attorney's fees that were incurred in prosecuting a section

7

362(k) claim." *Young v. Repine (In re Repine)*, 536 F.3d 512, 522 (5th Cir. 2008). More recently, and recognizing that it was creating a circuit split with *In re Repine*, the Ninth Circuit, in an opinion that was amended twice, held that "a damages action for a stay violation is akin to an ordinary damages action, for which attorney fees are not available under the American Rule." *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2009), *petition for cert. filed*, Case. No. 09-1525 (June 11, 2010). The Sixth Circuit has not addressed this issue, although the Sixth Circuit Bankruptcy Appellate Panel decided in *Sharon* that a debtor is entitled to recover attorney's fees for an adversary proceeding where the violator's action forced the debtor into court to recover losses, *In re Sharon*, 234 B.R. at 688.

This court disagrees with the holding and the unpersuasive reasoning in *Sternberg*. The Ninth Circuit dubiously found that the straightforward language of § 362(k) is ambiguous, then looked for guidance to a law dictionary and examples of state law malpractice and bad faith causes of action not created by any federal statute. This court does not find the language of the statute ambiguous or in need of odd parsing of simple language or resort to a dictionary or the guidance of Tennessee, California or Colorado state common law to inform the intent of Congress in § 362(k). Significantly, this specific provision of § 362, and indeed § 362 extensively in general, was materially amended by Congress in 2005 in respects not relevant to this case but in ways that can fairly be characterized as creditor- friendly. By that time, there was substantial established precedent, including Ninth Circuit and Ninth Circuit Bankruptcy Appellate Panel cases, *see, e.g.*, *In re Dawson*, 390 F.3d 1139(9th Cir. 2004); *Havelock v. Taxel (In re Pace)*, 159 B.R. 890, 900 (B.A.P. 9th Cir. 1993), awarding fees for prosecuting then § 362(h) claims and adversary proceedings as "actual damages" against creditor defendants for violation of the automatic stay. If in 2005 Congress thought that established case law and such fee awards misconstrued the plain meaning of its statute, and improperly penalized creditors for actions in disregard of § 362(a), it had the opportunity to fix the problem by amending § 362(h) to remove any ambiguity in and the misconception by many courts of its expressed intent. It did not. Moreover, the Ninth Circuit itself in the case *Orange Blossom Limited Partnership v. Southern California Sunbelt Developers, Inc. (In re Southern California Sunbelt Developers, Inc.)*, 608 F.3d 456 (9th Cir. 2010), has since resorted equally unpersuasively to hyper-technical legal gymnastics to distinguish *Sternberg* in the context of applying § 303(i) of the Bankruptcy Code, which permits a judgment for attorney's fees upon dismissal of an involuntary petition. 11 U.S.C. § 303(i).

This court also disagrees with the policy analysis advanced by the Ninth Circuit in support of its holding in *Sternberg*. The Ninth Circuit's statement that "[p]ermitting a debtor to collect attorney fees

8

incurred in prosecuting a damages action would further neither the financial nor the non-financial goals of the automatic stay," *Sternberg*, 595 F.3d at 948, is simply wrong. The automatic stay and the breathing room it affords from creditor collection activities play a vital and fundamental role in bankruptcy. *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 503 (1986). The fee shifting provision in § 362 serves to protect rights belonging to persons in difficult circumstances that are not necessarily measured by money alone. *Cf. City of Riverside v. Rivera*, 477 U.S. 561, 577-78 (1986). Without such a provision, individual debtors' attorneys would be less likely to pursue vindication of the stay and their clients' rights thereunder, both because their bankrupt clients lack the money to pay hourly fees and because of the oftentimes relatively small amount of probable damages, as in this case, making a contingency fee wholly impractical. The *Sternberg* holding that the right to fees under § 362(k) stops at the courthouse door gives creditors free shots at continuing pre-petition collection activity with little practical fear of financial accountability for their actions and hence little incentive to stop it. Under the Ninth Circuit analysis, a debtor who sustains injury from and seeks the help of counsel to stop automatic stay violations is effectively powerless to make a creditor pay the damages and fees incurred. Whether conduct constitutes a violation is also oftentimes reasonably disputed by the parties, giving debtors' counsel little incentive to litigate the contours of § 362(a) in close cases for the benefit both of any particular debtor as well as for the bankruptcy system as a whole. As one bankruptcy judge in the Ninth Circuit rhetorically asks in likewise noting that "*Sternberg* weakens substantially the effectiveness of the automatic stay," "[w]hat good is it to be entitled to damages and attorneys' fees for a violation of the automatic stay if it costs a debtor much more in unrecoverable fees to recover such damages and recoverable attorneys fees? In many, if not most, cases that will likely be the situation." *Bertuccio v. Cal. State Contrs. Licence Bd. (In re Bertuccio)*, Case No. 04-56255, 2009 Bankr. LEXIS 3302, *22-23 n.7, 2009 WL 3380605, *7 n.7 (Bankr. N.D. Cal. Oct. 15, 2009).

This court instead holds that attorney's fees for prosecuting a damages action under § 362(k) may be compensable as actual damages under the statute under certain circumstances. The criteria for an award of attorney's fees for prosecuting an action for damages should be the same as for other actual damages sought by a debtor under § 362(k). Namely, the attorney's fees and costs claimed as damages, whether pre-litigation or post-litigation, must have been proximately caused by and reasonably incurred as a result of the violation of the automatic stay. An award of fees, like an award of other actual damages under § 362(k), must be proven with reasonable certainty and may not be speculative. *See In re Archer*, 853 F.2d at 499-

9

500. If litigation is unnecessary to afford a complete remedy to a debtor, then the fees for commencing and prosecuting an action will fail this standard. On the other hand, if litigation is necessary to afford a complete remedy to a debtor under the particular circumstances of the case, there is nothing in the plain language of § 362(k) that precludes a judgment for the attorneys' fees and costs incurred in prosecuting it.

### ii. Availability of Fees Absent Other Compensatory Damages

The court has determined above that Samantha Grine is not entitled to any actual damages and that Richard Grine is entitled only to a *de minimis* money judgment for other actual damages of $5. Some courts hold that attorneys' fees may not be awarded absent other compensable damages incurred by the complainant. *See, e.g., Whitt v. Philadelphia Housing Authority (In re Whitt)*, 79 B.R. 611, 615-16 (Bankr. E.D. Pa. 1987); *Lovett v. Honeywell*, 930 F.2d 625, 629 (8th Cir. 1991). Other courts hold that attorneys' fees may be recoverable as damages under § 362(k) even if debtors have not proven other compensable harm. *See, e.g.*, *Harris v. Memorial Hospital (In re Harris)*, 374 B.R. 611, 616 (Bankr. N.D. Ohio 2007); *In re Robinson*, 225 B.R. 75, 86 (Bankr. E.D. N.Y. 1998); *In re Skeen*, 248 B.R. 312, 322 n. 5 (Bankr. E.D. Tenn. 2000).

This court is persuaded by those courts holding that attorneys' fees may be awarded under § 362(k) even if no other amounts are awarded as actual damages. Other bankruptcy courts in the Sixth Circuit have generally adopted this position. *See In re Harris*, 374 B.R. at 616; *In re Skeen*, 248 B.R. at 322 n. 5; *Cousins v. CitiFinancial Mortgage Co. (In re Cousins)*, 404 B.R. 281, 290 and n.9 (Bankr. S.D. Ohio 2009). The words of § 362(k), with actual damages "including" attorneys' fees, compels this result, as do the general policy considerations underpinning the statute described above. Debtors may still be injured by a violation of the automatic stay without being able to translate that injury into money. Should a debtor have to guess whether a post-petition bill received from a creditor in violation of the automatic stay was a one-off accident or whether it will be followed continuously by others? The evidence in this case shows that the violation would have been repeated if counsel had not intervened. Should a debtor have to wait for a violation to ripen into escalating monetary consequences to be compensated for the assistance of counsel in addressing the problem, such as, for example, improper removal of funds from an account and overdraft fees having been incurred, or improper seizure of a car and lost wages from an inability to get to work having ensued?[3] The language and remedial purpose of the statute say otherwise, where the basic standards

---

[3] Indeed, many cases require debtors, their attorneys or both to mitigate the damages arising from stay violations. *See e.g., In re Harris*, 374 B.R. at 616-617.

10

of proof described above can be met with respect to the attorneys' fees requested.

### iii. Standard For Evaluating Claimed Attorneys' Fees

Notwithstanding the absence of the word "reasonable" in § 362(k), *cf.* 11 U.S.C. § 303(i)(1)(B), courts making fee awards under this section apply a reasonableness standard. *See, e.g., Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 11 (B.A.P. 9th Cir. 2002)("Section 362(h) provides little guidance regarding the applicable standards for awarding actual damages. Nonetheless, most courts apply a reasonableness analysis."). The legal basis for doing so is provided by 11 U.S.C. § 329, entitled "Debtor's transactions with attorneys." This section applies to compensation of an attorney representing a debtor in a bankruptcy case, "or in connection with such a case" and provides that "[i]f such compensation exceeds the *reasonable* value of any such services the court may cancel any such agreement, or order the return of any such payment. . . ." 11 U.S.C. § 329 (emphasis added). Under such broad language, this adversary proceeding is at least one "in connection" with a case under Title 11, with Plaintiffs pursuing a cause of action expressly created by a section of Title 11. *See Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 718-19 (6th Cir. 2001). The court will likewise apply a reasonableness standard to the attorney's fees sought in this case.

To determine the reasonableness of attorney fees, this court generally applies the "lodestar" method of fee calculation endorsed by the Supreme Court and the Sixth Circuit under numerous other federal fee shifting statutes whereby the court multiplies the reasonable number of hours billed by a reasonable billing rate. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983) and employing the lodestar method in determining an award of attorney fees in a civil rights case); *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991)(adopting lodestar method of fee calculation in bankruptcy cases); *accord In re Pawlowicz*, 337 B.R. 640, 647 (Bankr. N.D. Ohio 2005)(following lodestar method in awarding attorney's fees under former § 362(h)). The court then considers other factors that may be relevant to adjust the award upward or downward to achieve a reasonable result.[4] *Reed,* 179 F.3d at 471. The fee applicant "should submit evidence supporting the hours worked and rates claimed." *Id.*

---

[4] These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Reed*, 179 F.3d at 472, n.3.

11

### iv. Application of Law to Plaintiffs' Fee Request

Although Defendant argues that the attorneys' fees claimed in this case are not the result of his violation of the automatic stay, he testified that Richard Grine would have continued to receive another two or three billing statements from him before the computer error that resulted in the violation would have been discovered had he not received communication from Plaintiffs' attorney regarding the stay violation. This is a case where counsel's intervention was both necessary and appropriate to stop the violation and address the problem. Debtors are generally informed by counsel that collection actions will stop when they file their bankruptcy petition. When they do not, they are left to wonder whether they misunderstood what happens upon filing for bankruptcy relief. Should they just ignore it and hope it stops? What if it does not and then more substantial damages result that could have been avoided if they promptly brought the problem to the attention of counsel? Should debtors instead be required to follow up on their own, with a "friendly" phone call to a creditor violating the stay, even though they have counsel? Or should they follow up with counsel and have their lawyer address the problem? And if counsel is called, must counsel follow up on behalf of his clients to address a creditor's violation of the law essentially on his own dime if his clients cannot afford to pay for his additional services?

The fees incurred in this case in sending Defendant the demand letter, then discussing the issue and negotiating a settlement with Defendant, are for the type of actions that this and other courts anticipate and expect that counsel will take on behalf of debtors in the situation faced by Plaintiffs. *See In re Harris*, 374 B.R. at 618 ("When a creditor violates the stay, it must expect that a debtor will take some type of action...[i]t must also be expected that a debtors' attorney will take steps to protect their client's rights..."); *In re Cousins*, 404 B.R. at 290 n. 9. Mack's actions were the proximate result of Defendant's action in sending Richard Grine a bill that violated § 362(a). While Mack's initial $1,500 demand was unreasonable and perhaps overly litigious, as demonstrated by a layperson's visceral reaction to it, Plaintiffs quickly agreed to compensation reasonable under the circumstances to address the situation fairly and without litigation. When that compromise fell through, not due in the court's view to the fault of Mack, the evidence shows that he afforded Defendant a final opportunity to settle without litigation. Mack expressly warned Defendant that a lawsuit would be filed if he did not. When there was no further response from Defendant within a reasonable time, the commencement of the lawsuit was both necessary to compensate Plaintiffs for having been put in the position of having to contact and consult with Mack to address the violation in the first place and the result of the violation. Plaintiffs were, therefore, entitled to have their attorney address

Defendant's violation of the stay and Richard Grine is entitled to be compensated for the reasonable attorney's fees and costs in doing so, both before filing the complaint initiating this adversary proceeding and afterward.

Mack testified that his hourly rate of $250 per hour is the rate that he charges for his services in bankruptcy cases. In determining the reasonableness of an attorney's claimed hourly rate, the court considers "the prevailing rate in the relevant market - i.e., 'the rate that is customarily paid in the community to attorneys of reasonably comparable skill, experience, and reputation.'" *Disabled Patriots of Am., Inc. v. Reserve Hotel, Ltd.*, 659 F. Supp.2d 877, 885 (N.D. Ohio 2009) (internal citation omitted). The relevant market is "the venue of the court of record," rather than the "geographical area wherein [counsel] maintains his office and/or normally practices." *Id.* (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir.2000)). In determining a reasonable rate, the court may consider "a party's submissions, awards in analogous cases, and its own knowledge and experience from handling similar requests for fees." *Id.; see Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir.1994) (stating that the court is "itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.")

While Plaintiffs offered no testimony or evidence regarding the reasonableness of Mack's requested hourly rate of $250, the court takes judicial notice of the hourly rates charged by attorneys representing debtors in consumer bankruptcy cases in this court. Those rates generally range from $125 to $225 per hour. Having reviewed the Attorney Time Sheet, which itemizes the work Mack performed and the hours expended doing so, and having considered the straightforward and routine nature of both the legal and factual issues presented in this case, the court finds that 2.8 hours of attorney time at an hourly rate of $200 is reasonable and awards Plaintiff Richard Grine attorney fees in the amount of $560 as an element of his actual damages. In arriving at this amount, the court has considered the fact that Mack had filed a similar complaint on behalf of Plaintiffs against another creditor one month before this adversary proceeding was commenced and Mack's testimony that he utilized that complaint to prepare the complaint in this proceeding. The court also takes judicial notice of the fact that, but for the party to whom it was addressed, an identical demand letter was sent to Defendant as was sent to the defendant creditor in the first proceeding.[5] The court, therefore, finds that 1.5 hours to prepare the demand letter and to prepare, review

---

[5] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to

and file the complaint in this proceeding, at a total cost of $375 as set forth on the Attorney Time Sheet, is unreasonable. The court has also considered the fact that time spent by Mack reviewing case law on libel per se has no relation to any claim of Plaintiffs against Defendant and is, therefore, not recoverable.[6] In addition, the court considers certain entries on the Attorney Time Sheet excessive in light of the itemized work performed, such as .50 hours to review Defendant's original one page pro se answer to the complaint, .15 hours for receipt of, and presumably to review, Defendant's motion to continue hearing,[7] and .25 hours to review Defendant's two-page motion for leave to amend his answer after obtaining counsel. Other entries include attorney fees that the court finds to be unreasonable, including .5 hours to file a motion to continue due to counsel's own scheduling conflict and 1 hour to file a lengthy response to Defendant's motion for leave to amend his answer after obtaining counsel, which motion was granted.

In summary, the court finds that Plaintiffs have not met their burden of proving a stay violation as to Plaintiff Samantha Grine and that Plaintiff Richard Grine's damages proximately resulting from Defendant's violation of the automatic stay total $565, which amount includes attorney fees based on 2.8 hours at $200.00 per hour, for a total of $560, plus $5 for his expense of traveling to his attorney's office. Plaintiffs have presented no evidence of any costs reasonably incurred in prosecuting this action – because Plaintiffs are debtors, there was no filing fee required to commence the adversary proceeding.

## **CONCLUSION**

For the foregoing reasons, the court finds that Plaintiff Richard Grine is entitled to judgment on the complaint in his favor and against Defendant in the amount of $565 and that Defendant is entitled to judgment in his favor as to Plaintiff Samantha Grine's claim brought under 11 U.S.C. § 362(k). The court further finds that Plaintiffs are entitled to judgment on Defendant's counterclaim for breach of contract. A separate judgment in accordance with this Memorandum of Decision will be entered.

---

the case before it).

[6] To the extent that such research was due to Defendant's notation "Extortion Money" in the memo section of the check made payable and sent to Mack, it would appear that any "libel" claim would be a claim of Mack's and not Plaintiffs.

[7] Although this entry on the Attorney Time Sheet is for time spent on December 14, 2009, and states "Received Dr. Chambers' Motion to continue with hearing," the court's review of the docket in this proceeding shows that no motion was filed by Defendant on or about that date. Rather, on that date, Defendant filed an opposition to Plaintiffs' motion to continue that consisted of one paragraph. [*See* Doc. # 12].